(30 App. Div. 486.)

### TOBIAS v. WIERCK et al.

(Supreme Court, Appellate Division, First Department. June 10, 1898.)

PARTNERSHIP—ACTION FOR ADVERTISING—EVIDENCE.

> The defendants, for whom as partners the plaintiff had previously done advertising, formed a corporation, in 1892, to which they transferred a certain boat, which was owned by them, and which plaintiff thereafter continued to advertise. Plaintiff was exclusively represented in the matter by his bookkeeper. The latter made out three bills, for this advertising, to the defendants, who inserted the name of the corporation, and returned them with checks signed in the name of the corporation, which were accepted and deposited by plaintiff's bookkeeper, who thereafter made out bills to the corporation. *Held*, in an action to recover for services subsequent to the incorporation, that they were rendered upon its credit, and that the defendants were not liable.

Appeal from trial term, New York county.

Action by Francis J. Tobias against John P. Wierck and others. From a judgment entered on a direction of the court on a trial without a jury (48 N. Y. Supp. 146), defendants appeal. Reversed.

The action is brought to recover for services alleged to have been rendered to the defendants, at their request, between June 30, and November 1, 1892. These services consisted in advertising the trips of the steamboat Ha-

vana. It appears that during the year 1891, and up to March 15, 1892, this boat was owned by the defendants and one Wohlers. On that day they organized a corporation under New Jersey laws, called the "Liberty Steamboat Company," and transferred the boat to it. During 1891 the plaintiff did considerable advertising for the boat. The bills were then made out to, and were paid by, John P. Wierck & Co., seemingly by personal checks of John P. Wierck. After the incorporation, Beyer, plaintiff's bookkeeper, rendered three bills for advertising to Wierck & Co. The latter's bookkeeper, one Niedner, inserted the name of the corporation as debtor in place of that of Wierck & Co.; and checks of the company, signed by its treasurer and countersigned by its president, were thereupon remitted in payment. Beyer received and receipted the bills, and indorsed the checks for deposit, as the plaintiff's attorney. Subsequent bills he made out in the name of the corporation.

Argued before BARRETT, P. J., and McLAUGHLIN, PATTERSON, and O'BRIEN, JJ.

William S. Maddox, for appellants.

George Welwood Murray, for respondent.

BARRETT, J. We need not consider the question of the defendants' liability as part owners of the Havana, apart from any partnership contract. The claim here is not for necessaries and supplies suitable and proper for the ship. The defendants' liability, if any, rests upon their alleged express contract. The plaintiff's proof on this head was slight. He showed that in 1891 orders for advertising were brought to the plaintiff's office by Niedner, the defendants' bookkeeper. Niedner did this under the direction of one of the defendants. The plaintiff was represented in the transaction solely by his bookkeeper, Beyer, and he had nothing to do personally with the arrangements which Beyer made with the defendants. Beyer is dead, and the plaintiff's case rests mainly upon the fact that, from time to time, his bills were rendered to, and paid by, the defendants' firm. Upon these facts, standing alone, the learned trial judge was perhaps justified in finding that the plaintiff's earlier services were rendered upon the faith of the defendants' credit. The difficulty is in extending that finding to the services rendered by the plaintiff after the transfer of the Havana to the Liberty Steamboat Company. We are unable to discover any evidence to support the latter finding. In fact, we think it plain that the advertising now sued for was done for and upon the credit of this corporation.

The evidence on this head, due doubtless to the death of Beyer, is mostly documentary. It appears that, after the transfer, Beyer continued to make out bills in the name of Wierck & Co. These, however, were changed by the latter into the name of the company, and returned with corporate checks signed and countersigned by its officers. This was plain notice that Wierck & Co. refused any longer to be considered the plaintiff's debtors, and insisted that the company now take that position. The plaintiff acquiesced in this by accepting the company's checks, and thereafter making out the bills in its name. The effect of this evidence is precisely the same as that upon which the plaintiff claims to have made out a contract between himself and the defendants. Up to a certain point, the bills were made to, and paid by, the firm. Upon that the plaintiff

claims that the defendants contracted with and pledged their credit to him. But when that course of business ceased; when the bills were no longer thus made out and paid; when in fact they were made out to, and paid by, the corporation,—the old arrangement ceased, and the new one went into effect. It is said that the former owners of the Havana might have continued business under the style of the "Liberty Steamboat Company." That is true, but the plaintiff's bookkeeper could have had no such understanding. There was no reason to suppose that this was a mere change of partnership name; and the form of the checks sent to the plaintiff, signed and countersigned by ostensible officers of the company, plainly indicated that a corporation had been formed.

The fact that the plaintiff did not personally learn of the formation of the corporation until later cannot aid him. He is bound by Beyer's knowledge. He admits that the latter was acting for him, and that he attended to all the work "excepting checking and the placing of the business." It was he who received orders, made out and receipted bills, and indorsed checks. The plaintiff merely took the orders and placed them.

Nor did the defendant John P. Wierck bind himself by the conversation with the plaintiff some two years later, to which the latter testified. The substance of this conversation was that Wierck agreed to pay a part of the plaintiff's bill rather than be troubled with a lawsuit. What he offered was clearly as a compromise of a claim which he denied. There is nothing in what transpired at that interview, even as narrated by the plaintiff, to change the legal effect of the actual facts upon which the question of liability here rests. We think it clear that, even if the defendants were within the partnership rule, and were bound to give the plaintiff notice of the change in question, they in fact did so.

The judgment should therefore be reversed, and a new trial ordered, with costs to the appellants to abide the event. All concur.